IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CHRISTINA S.**,[1]<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**KILOLO KIJAKAZI**, Acting Commissioner of Social Security,[2]<br><br>　　　　Defendant. | Case No. 1:20-cv-02137-IM<br><br>**OPINION AND ORDER** |

Betsy R. Shepherd, 425 Riverwalk Manor Dr., Dallas, GA 30132. Attorney for Plaintiff.

Natalie K. Wight, United States Attorney, and Renata Gowie, Assistant United States Attorney, United States Attorney's Office, 1000 SW Third Avenue, Suite 600, Portland, Oregon 97204; Nancy C. Zaragoza, Special Assistant United States Attorney, Office of General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Attorneys for Defendant.

**IMMERGUT, District Judge**

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration, is substituted for Andrew Saul as Defendant. *See* Fed. R. Civ. P. 25(d).

PAGE 1 – OPINION AND ORDER

Plaintiff Christina S. seeks review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") pursuant to the Social Security Act. For the following reasons, this Court AFFIRMS the Commissioner's decision.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039). "This is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

If the evidence is "susceptible to more than one rational interpretation," the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1225.

PAGE 2 – OPINION AND ORDER

BACKGROUND

A. **Plaintiff's Application**

Plaintiff was born in 1979. AR 26, 70. She has past relevant work as a customer service representative, fast food worker, and fast food manager/trainee. AR 26; *see also* AR 81–82. Plaintiff filed applications for SSDI and SSI on January 19, 2018, alleging disability since March 13, 2013. AR 292, 294. She was 33 years old on the alleged onset date. AR 26.

Plaintiff's applications were denied initially and upon reconsideration. AR 202–10, 212–17. Plaintiff requested a hearing. AR 221–22. Plaintiff appeared with counsel at an administrative hearing on February 27, 2020, before Administrative Law Judge ("ALJ") John D. Sullivan. AR 37.

On March 12, 2020, the ALJ issued a decision finding that Plaintiff had not been "under a disability within the meaning of the Social Security Act" since March 13, 2013, the date the application was filed. AR 16–28. On March 23, 2020, Plaintiff requested review of the ALJ's decision by the Appeals Council. AR 273. On October 14, 2020 the Appeals Council denied the request for review, thereby making the ALJ's decision the Commissioner's final administrative decision in this case. AR 1–4. Plaintiff now seeks review of the Commissioner's decision.

B. **The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

PAGE 3 – OPINION AND ORDER

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in

        significant numbers in the national economy? If so, then the claimant is
        not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
        404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
        she is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).; *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

    The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 146, n.5. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1098, 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Tackett*, 180 F.3d at 1099.

**C.  The ALJ's Decision**

    At step one of the sequential evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 13, 2013, the alleged onset date. AR 18. The ALJ found at step two that Plaintiff "has the following severe impairments: Lumbar Spondylosis; Left Lower Leg Venous Insufficiency; Obesity; Bipolar Disorder; Major Depressive Disorder; Social Anxiety Disorder; Anxiety Disorder; Binge Eating Disorder; Posttraumatic Stress Disorder; Asthma; [and] Peripheral Neuropathy . . . ." *Id*. at 18–19. The ALJ concluded at step three that none of Plaintiff's impairments meets or medically equals the

PAGE 5 – OPINION AND ORDER

severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 19.

The ALJ further found that Plaintiff

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can occasionally lift and carry up to 20 pounds and frequently lift and carry up to 10 pounds or less. The claimant can sit for 6 hours of an 8-hour day and stand and/or walk in combination for no more than 6 hours of an 8-hour day. The claimant can push and pull as much as she can lift and carry. In addition to that, there are postural limitations. The ability to climb ramps and stairs can be done occasionally but the claimant should avoid ladders, ropes, and scaffolding. The claimant may only occasionally stoop, kneel, crouch, and crawl. There are mental limitations. The ability to understand, remember, and carry out instructions should be limited to simple and routine tasks with a level 2 reasoning or less. The claimant's use of judgment is limited to simple work-related decisions. Interaction with supervisors, coworkers, and the general public can only be done on an occasional basis. Dealing with changes in the workplace setting would be limited to dealing with simple work-related decisions. The claimant can have no exposure to dust, odors, fumes, and pulmonary irritants. Time off-task would be able to be accommodated by normal breaks.

AR 21. The ALJ found at step four that Plaintiff had past relevant work as a customer service representative, fast food worker, and fast food manager/trainee, but that she could not perform the past relevant work as actually or generally performed. AR 26. Finally, at step five, the ALJ considered Plaintiff's age, education, work experience, and RFC, as well as the testimony from a Vocational Expert ("VE"). AR 27. The ALJ concluded that jobs exist in significant numbers in the national economy that Plaintiff can perform. AR 27–28. The ALJ identified the following potential jobs: (1) garment sorter, DOT 222.687-014; (2) laundry folder, DOT 369.687-018; and (3) bottle line attendant, DOT 920.687-042. AR 27. For these reasons, the ALJ concluded that Plaintiff had not been disabled since March 13, 2013. AR 28.

PAGE 6 – OPINION AND ORDER

## DISCUSSION

In her brief, Plaintiff argues: (1) the ALJ improperly rejected the medical opinion of her treating psychologist, Dr. Lizbeth Eckerd; (2) the ALJ improperly rejected Plaintiff's testimony; (3) the ALJ improperly addressed lay witness evidence from Plaintiff's mother and boyfriend; and (4) the ALJ's step five finding is not supported by substantial evidence. For the following reasons, this Court disagrees.

### A. Substantial Evidence Supports the ALJ's Evaluation of the Medical Opinion Evidence

#### 1. Legal standards

For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion evidence. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). To that end, there is no longer any inherent extra weight given to the opinions of treating physicians. Instead, the ALJ considers the "supportability" and "consistency" of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are. *Id.* §§ 404.1520c(c), 416.920c(c). The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* §§ 404.1520c(b), 416.920c(b). The ALJs are not required to explain how they considered other secondary medical factors, unless they find that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* §§ 404.1520c(b)(3); 416.920c(b)(3).

Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical

opinion[] . . . the more persuasive the medical opinion[] . . . will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). Likewise, "[t]he more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the opinion[] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

### 2. Analysis

Plaintiff argues that the ALJ's analysis of the opinion of Plaintiff's treating psychologist, Lizbeth Eckerd, Ph.D., was not supported by substantial evidence. ECF 16 at 9. Dr. Eckerd opined that Plaintiff's PTSD symptoms, including difficulty concentrating, depression, and hyperarousal, would make it "unduly difficult for her to meet the demands for full-time employment." AR 1627. Dr. Eckerd also noted that social aspects of a work environment would be difficult for Plaintiff, as she is "hypersensitive to perceived slights" and may sometimes react with anger. *Id.*

The ALJ concluded that Dr. Eckerd's opinion of Plaintiff's "severe limitations" was "not persuasive" because it was neither well-supported nor consistent with the record as a whole. AR 25. The ALJ noted that the limitations were not well-supported because the provider's progress notes describe Plaintiff as "cooperative and pleasant," AR 1605, and "engaged" in discussions, AR 1607. Indeed, the ALJ observed that only Plaintiff's subjective reporting consistently matched the level of severity described in Dr. Eckerd's opinion. AR 25. In highlighting the opinion's inconsistency with the record, the ALJ also pointed to examinations showing Plaintiff's alert and cooperative nature—despite simultaneous reports of worse symptoms in some instances. AR 25; *see also, e.g.*, AR 1694, 1789, 1793, 2982.

Plaintiff challenges the ALJ's finding, arguing that Plaintiff's ability to interact with Dr. Eckerd in a one-on-one therapy session does not translate to managing the stress and social interaction inherent in a competitive work setting. ECF 16 at 7. Plaintiff further states that "[t]he

PAGE 8 – OPINION AND ORDER

ALJ has improperly taken the doctor's notes out of context" and that "the opinion, when properly considered, establishes that Plaintiff cannot sustain full-time work activity . . . ." *Id.* at 7–8. In evaluating the support of Dr. Eckerd's opinion, the ALJ credited Dr. Eckerd's notes regarding Plaintiff's ability to cooperate and engage in discussion with her. AR 25. The ALJ also highlighted the numerous examinations in which Plaintiff is described as "alert and cooperative." AR 25. It is reasonable to conclude from these interactions that Plaintiff's symptoms and social anxiety were not as "severe" as Dr. Eckerd portrayed. Substantial evidence supports the ALJ's determination that Dr. Eckert's opinion was unpersuasive based on its lack of support from and inconsistency with the record as a whole.

## B. Substantial Evidence Supports the ALJ's Credibility Determination Regarding Plaintiff's Symptom Testimony

### 1. Legal standards

There is a two-step process used in the Ninth Circuit for evaluating a claimant's testimony about the severity and effect of the claimant's symptoms. *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the [plaintiff] meets this first test, and there is no evidence of malingering, 'the ALJ can reject the [plaintiff's] testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036

PAGE 9 – OPINION AND ORDER

(quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

The ALJ's evaluation of a claimant's subjective symptom testimony may be upheld overall even if not all of the ALJ's reasons for rejecting the testimony are upheld. *See Batson*, 359 F.3d at 1197. Even still, the ALJ may not reject testimony "solely because" the claimant's symptom testimony "is not substantiated by objective medical evidence." *Robbins*, 466 F.3d at 883.

**2. Analysis**

The ALJ concluded that Plaintiff's "allegations as to the intensity of symptoms are not entirely consistent with the record." AR 22. Regarding both Plaintiff's mental and physical health issues, the ALJ concluded that the record, objective findings, and Plaintiff's level of activity failed to support the alleged severity of symptoms. AR 23–24.

The ALJ determined that Plaintiff's "symptoms have been largely controlled with medication." AR 22; *see also* AR 24. An ALJ may consider the amount and type of medication and treatment in evaluating the intensity and persistence of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Evidence that medication can help relieve symptoms "can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). Here, the ALJ charted the controlling effect of medication on Plaintiff's mental health from 2013 through 2019, noting that by 2018 the Plaintiff's "anxiety was doing well on current medications" and the "bipolar/depression was noted to be in remission." AR 22–23. The ALJ

PAGE 10 – OPINION AND ORDER

also noted that Plaintiff's neuropathy and other pain symptoms were managed well with medication. AR 24; *see also, e.g.*, AR 1702 ("Doing well on current pain management plan."), 1750 (same), 1856 (same), 1879 (same). The record evidence thus showed that Plaintiff's medication regimen was relieving her most severe symptoms.

The ALJ also pointed to the inconsistency between medical evidence and the severeness of alleged symptoms. AR 23. An ALJ must consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence, including [the claimant's] history, the signs and laboratory findings, and statements by [] medical sources or other persons about how [the claimant's] symptoms affect [them]." 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *see also Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012). Here, the ALJ noted that, even when Plaintiff was simultaneously reporting worse symptoms, mental status examinations show that she was alert, cooperative, and evincing a normal attention span and concentration. AR 23; *see also, e.g.*, AR 1786–89, 1816–18, 1835–37. Similarly, when Plaintiff reported a high level of physical pain, she presented at examinations without "acute distress" in almost all instances. AR 24; *see also, e.g.*, AR 2072–73, 2093–94, 2008–09, 2038–39. Further, testing only showed mild to moderate neuropathy, AR 1902, despite Plaintiff's allegations that her neuropathy was debilitating, *see* AR 46–47. During most examinations, Plaintiff also presented with a normal gait, station, and strength. AR 24; *see also, e.g.*, AR 749, 1082, 1202, 1376.

The ALJ also noted that Plaintiff's level of activity was inconsistent with the alleged severity of symptoms. An ALJ may consider a claimant's activities when evaluating the reliability of their symptom allegations. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). First, the ALJ determined that Plaintiff's level of activity was inconsistent with her mental health

PAGE 11 – OPINION AND ORDER

symptoms, "particularly her allegations of how difficult it is for her to be around other people." AR 23. The ALJ noted that, despite Plaintiff's allegation that "she cannot leave her house," she has engaged in social activities with groups such as fishing, AR 3030, attending a family party, AR 3030, dating, AR 3015, 3111, and driving to California to visit her father, AR 3192. *Id.* The ALJ acknowledged that Plaintiff was released from at least one job due to interpersonal challenges with others but asserted that the residual functional capacity accommodated for this by limiting the Plaintiff to occasional interaction with others. *Id.* Second, the ALJ noted that when Plaintiff's neuropathy and physical pain were reported as worse, Plaintiff remained functional and active. AR 24; *see also* AR 1725, 1780, 1856. 1906. The ALJ also noted that Plaintiff "feeds pets, prepares simple meals, drives a car, does laundry, performs household repairs, mows, cleans, shops in stores, and manages money." AR 24; *see also* AR 370–74. These activities demonstrate that Plaintiff was capable of more social interaction and physical activity than that suggested by her symptom testimony. Accordingly, the ALJ reasonably concluded that 1) Plaintiff's social activity was inconsistent with the severity of her alleged interpersonal difficulties and 2) Plaintiff's physical activity was inconsistent with the severity of her alleged pain.

These are clear and convincing reasons for rejecting Plaintiff's symptom testimony. The ALJ reasonably evaluated the record evidence that conflicted with Plaintiff's testimony as to the severity of her mental health symptoms and her physical health symptoms, with a focus on her interpersonal difficulties and neuropathy pain. *See Burch*, 400 F.3d at 679.

### C. The ALJ's Failure to Address the Persuasiveness of Plaintiff's Mother's and Boyfriend's Statements was Harmless Error

#### 1. Legal standards

Lay witnesses "in a position to observe a claimant's symptoms and daily activities are competent to testify," and the ALJ must consider their testimony. *Dodrill*, 12 F.3d at 918–19. An ALJ may discount lay witness testimony only by providing reasons germane to each witness. *Id.* at 919; *see also Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).[3] The Ninth Circuit has determined that "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (alterations in original) (quoting *Buckner v. Astrue,* 646 F.3d 549, 560 (8th Cir. 2011)); *see also id.* ("Because the ALJ had validly rejected all the limitations described by the lay witnesses in discussing [Plaintiff's] testimony, we are confident that the ALJ's failure to give specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate nondisability determination.").

#### 2. Analysis

Plaintiff's mother and boyfriend both wrote and signed third-party statements. AR 454–56, 457–59. In their statements, each addressed how Plaintiff's anxiety keeps her in the house

---

[3] Regulations applicable to SSI claims filed after March 27, 2017—including Plaintiff's— state that an ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. §§ 404.1520c(d), 416.920c(d). The Ninth Circuit has not yet addressed whether the new regulations upend the Ninth Circuit rule requiring germane reasons for discounting lay witness testimony. *See Robert U. v. Kijakazi*, No. 3:20-cv-1817-SI, 2022 WL 326166, at *7 (D. Or. Feb. 3, 2022) (noting that the Ninth Circuit has not addressed the question and that courts in this district are split, but concluding that "the ALJ must continue to give germane reasons for discounting lay witness testimony" because the new regulations did not unambiguously remove the obligation).

PAGE 13 – OPINION AND ORDER

and how, when she does leave, she must do so with a family member or her boyfriend. AR 457–58 (asserting that "[Plaintiff's] debilitating anxiety . . . keeps her in the house" and "[Plaintiff's] mother or children have to go with her anytime she leaves the house . . ."), AR 456. Both statements also address Plaintiff's interpersonal difficulties, including feeling judged by others, and Plaintiff's resulting anxiety and panic attacks. AR 455–56 (observing that "[Plaintiff was anxious about the people [at Plaintiff's teller window] and always afraid she wasn't going to do her job right" and describing a panic attack resulting from Plaintiff's fear of going to work), AR 457–58. Plaintiff's mother also noted Plaintiff's inability "to keep on task." AR 455. Both Plaintiff's mother and boyfriend emphasized Plaintiff's neuropathy and resulting foot pain, which occurred especially while walking. AR 454, 457. Plaintiff's mother highlighted the negative side effects of Plaintiff's neuropathy medication, asserting that it made her "sleepy." AR 454–55. In addition to her third-party statement, Plaintiff's mother also completed a third-party function report on behalf of her daughter. AR 392–99. This report repeats similar concerns regarding Plaintiff's difficulties with concentration, leaving the house, panic attacks, and interacting with others. *Id.* In addition, Plaintiff's mother notes Plaintiff's insomnia, as well as stress and memory issues, in the report. AR 393, 397–98.

      The ALJ considered the above statements but did not discuss their persuasiveness. AR 26. These documents describe aspects of Plaintiff's mental and physical health disabilities that might impact her ability to maintain gainful employment and it was error not to address them. Such error was harmless, though, because an ALJ may rely on the same reasons she gave for discounting a claimant's credibility when a lay witness gives similar testimony. *Valentine*, 574 F.3d at 694. As noted above, the ALJ appropriately explained how Plaintiff's physical and mental health symptoms were largely controlled with medication. In addition, the ALJ

articulated that both medical evidence and Plaintiff's activity level contradicted Plaintiff's claims of disability and inability to work a full schedule. To the extent that this third-party testimony conflicts with medical examinations and testing that the ALJ relied on, AR 23–24, "[i]nconsistency with medical evidence is [a germane] reason" for an ALJ to reject lay opinion testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Accordingly, this Court finds the ALJ's error was harmless.

## D. Substantial Evidence Supports the ALJ's Step-Five Finding

### 1. Legal standards

At step five, the burden shifts to the Commissioner to establish that the claimant can engage in work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); *Lockwood v. Comm'r. of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). "The ALJ may meet his burden at step five by asking a vocational expert a hypothetical question [(1)] based on medical assumptions supported by substantial evidence in the record and [(2)] reflecting all the claimant's limitations, both physical and mental, supported by the record." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012) (citations omitted); *see also Brink v. Comm'r of Soc. Sec. Admin.*, 343 Fed.Appx. 211, 212 (9th Cir. 2009) ("A hypothetical question posed to a vocational expert must 'include all of the claimant's functional limitations, both physical and mental.'" (quoting *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995))). "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Hill*, 698 F.3d at 1162 (quoting *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

2. Analysis

Plaintiff argues that the ALJ, in posing hypothetical questions to the vocational expert, omitted the limitations assessed by Plaintiff's treating psychologist and the allegations of both Plaintiff and Plaintiff's two lay witnesses. ECF 16 at 14. Plaintiff explains that because these hypotheticals failed to address all of Plaintiff's limitations, the vocational expert's opinion based thereon has no evidentiary value. *Id.* As a result, Plaintiff concludes that the ALJ's decision based on this evidence was not based on substantial evidence. *Id.* However, in addressing the vocational expert, the ALJ is only required to present those limitations he finds credible and supported by the evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164–65 (9th Cir. 2001). Plaintiff's argument is unconvincing because, as discussed above, the Court finds no error concerning the ALJ's evaluation of the medical opinion evidence and Plaintiff's own statements and, furthermore, the Court finds any error regarding the lay witness evidence harmless.

## CONCLUSION

The Commissioner's decision that Plaintiff is not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 30th day of September, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge